### ADDATTE, (UNITED STATES v.)

[See United States v. Addatte, Cases No. 14,422 and 14,423.]

---

## Case No. 75.

### ADDERLY v. AMERICAN MUT. INS. CO. OF BALTIMORE.

[Taney, 126.][1]

Circuit Court, D. Maryland. Nov., 1847.

MARINE INSURANCE — SEAWORTHINESS — NECESSITY TO REPAIR LEAK.

1. In order to entitle the plaintiff to recover for a loss on a policy of insurance on his vessel, she must, at the time the policy attached, have been seaworthy for such a voyage as she was engaged in at the time of the disaster, and have been lost by reason of one of the perils insured against in the policy.

2. She is presumed to have been seaworthy at that time, unless the contrary is proved by the testimony; and the burden of proof of unseaworthiness is on the defendant.

3. If there was a leak in the vessel, at the time of sailing on the voyage insured for, of such a nature, that a prudent and discreet master, of competent skill and judgment, would have deemed it necessary to examine and repair the leak, before proceeding on the voyage, and the disaster was occasioned by his omission to do so, and would not otherwise have happened, there can be no recovery for the loss.

[Cited in The Titania, 19 Fed. Rep. 106, and in Union Ins. Co. v. Smith, 8 Sup. Ct. Rep. 546, 124 U. S. 405.

4. But if the character of the leak were such, that a master of competent skill and judgment might reasonably have supposed that she was seaworthy for the voyage in which she was then engaged, notwithstanding the leak, and on that account, omitted to examine and repair, then such omission to examine and repair will be no bar to the recovery.

In admiralty. This action was instituted on the 31st October, 1846. The plaintiff was a British subject, residing at Nassau, the owner of the brig Victoria; and he brought this action against the American Mutual Insurance Company of Baltimore, upon a policy of insurance effected on said vessel, which was lost on the voyage insured for. The defence taken was unseaworthiness at the time of the insurance; and negligence on the part of the master or owner, after the voyage had commenced. The facts of the case do not appear, except in the following prayers, on the part of the plaintiff and defendant, and the court's instructions to the jury.

### Plaintiff's Prayers.

1. That the question of seaworthiness, or unseaworthiness, is a question for the jury; and that the presumption is that the brig was seaworthy, till the contrary is proved.

2. That the burden of proof of unseaworthiness is upon the defendant.

3. That in determining whether the vessel was seaworthy or not the jury are to regard the whole evidence; and that part of the evidence bearing on said question, consists of the reports made to the said defendant and other underwriters in Baltimore, by their agent, Captain Clackner, and the fact of the receipt of the premium on the policy, after the defendant had been made acquainted with the particulars of the disaster which had happened to the brig, as the same were set forth in the papers delivered to them by the plaintiff's agent.

4. That although a leak may have been sprung on the second day after leaving Long Island, and continued for the time stated in the evidence; yet, that if on the third day, being the day of the brig's touching at Nassau, and some time before reaching there, the leak stopped, and the vessel did not spring a leak for between three and four days after leaving Nassau, and the leak was then caused by stress of heavy weather and high seas, then that there was no negligence on the part of the master or owner, in not causing said vessel to be carried into Nassau for examination and repairs.

### Defendant's Prayers.

1. The defendant prays the court to instruct the jury that, before the plaintiff can recover in this case for the loss of the brig mentioned in the policy sued on, the jury must find that, at the commencement of the risk, the brig was tight, staunch, strong and well found for a voyage from Long Island to New Orleans, by way of Nassau, with a cargo of salt; and that neither her construction nor the materials of which she was built, were such as to render her unfit to encounter the ordinary sea-perils of such a voyage.

2. The defendant further prays the court to instruct the jury that, if they find from the evidence, that upon the first day after leaving Long Island, with her cargo of salt, the said brig began to leak, so that it was necessary to pump her every half-hour, and that she continued to leak until her arrival

---

[1][Reported by James Mason Campbell, Esq., and here reprinted by permission.]

at Key West, where she was condemned as utterly unseaworthy, by the report of the surveyors, given in evidence, and that she commenced leaking in this manner in moderate weather, without any apparent cause, or extraordinary accident, to which the leaking could be ascribed, and that the leak continued for four or five days before the brig encountered any heavy weather or high seas at all, there is a strong presumption that the brig was unseaworthy when she sailed from Long island; and in the absence of any proof, on the part of the plaintiff, of any sea-peril occurring to the brig, between the time the risk commenced and when she began to leak, sufficient to produce the leak, the plaintiff is not entitled to recover.

3. The defendant further asks the court to instruct the jury that, if they find the facts stated in the preceding prayer, and further find that the said brig, upon the second day after leaving Long island, being in a condition to need repairs, and after she had been for a day leaking so badly that it was found necessary to pump her every half-hour, arrived off Nassau, her home port, where she could have been fully repaired, and where the master went ashore at 10 P. M. of one day, and returned at 10 A. M. on the following day, after having communicated with the owners and received his instructions to proceed upon the voyage to New Orleans—under all these circumstances there was negligence on the part of the master or owner, in not having the brig examined and repaired at Nassau, and the defendant is not liable for any subsequent loss or damages to said vessel, which was produced or increased by such negligence.

R. Johnson and J. M. Campbell, for plaintiff.

Brown & Brune, for defendant.

TANEY, Circuit Justice. 1. In order to entitle the plaintiff to recover, the vessel must have been seaworthy at the time the policy attached; that is to say, seaworthy for such a voyage as she was engaged in at the time of the disaster; and have been lost by reason of one of the perils insured against in the policy.

2. But she is presumed to have been seaworthy at that time, unless the jury find the contrary is proved by the testimony; and the burden of the proof of unseaworthiness is on the defendant.

3. If, when the vessel touched at Nassau, the leak, mentioned in the testimony, was such, that a prudent and discreet master, of competent skill and judgment, would have deemed it necessary to examine and repair the leak before proceeding on the voyage, and the jury find that the disaster was occasioned by his omission to do so, and would not otherwise have happened, then the plaintiff is not entitled to recover.

4. But if the jury find that, from the char-

acter of the leak, a master of competent skill and judgment might reasonably have supposed that she was seaworthy for the voyage in which she was then engaged, notwithstanding the leak, and on that account omitted to examine and repair, then such omission to examine or repair the vessel at Nassau, is no bar to the recovery of the plaintiff.

Verdict for the plaintiff.